[Civ. No. 26265. Fourth Dist., Div. One. July 22, 1983.]

IVAN HABRUN et al., Plaintiffs and Appellants, v.
DEPARTMENT OF SOCIAL SERVICES et al.,
Defendants and Respondents.

**[Opinion certified for partial publication.¹]**

[1]Certified for publication with the exception of sections II, IV, and V.

**COUNSEL**

Ellman & Stein and Melvyn B. Stein for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, Anne S. Pressman and James R. Lahana, Deputy Attorneys General, for Defendants and Respondents.

**OPINION**

**WORK, J.—**

I

Ivan and Virginia Habrun appeal a judgment refusing to reinstate their license to operate a residential care facility for the elderly, claiming Health and Safety Code section 1550[2] is unconstitutional; prejudice from Ivan being denied a Slavic interpreter, and by being denied a continuance to adequately prepare their defense.

---

[2]All statutory references are to the Health and Safety Code unless otherwise specified.

The Habruns operated a residential care facility for the elderly in El Cajon until August 1, 1980, when the state Department of Social Services summarily suspended their operation under section 1550 pending a hearing on the allegations. The Habruns were accused of multiple violations, including allegations of physical abuse and negligence endangering the health and safety of their residents. They incorrectly claim section 1550 unconstitutionally deprives them of due process because it allows the state to suspend their business permit before any adjudicative hearing at which they could defend against the accusations.

At the end of a lengthy hearing, the administrative law judge found Ivan had used excessive force against three residents; the coffee and milk served at the facility were watered down; and, on one occasion, a gate to the swimming pool at the facility negligently had been left unlocked and when a resident fell in, a nonresident neighbor had to jump over the fence to save her from drowning because there were no facility employees nearby. He also found Ivan misrepresented to some residents they would be allowed use of the swimming pool. The Habruns acknowledge these findings are sufficient for the department to revoke their license.

## II*

. . . . . . . . . . . . . . . . . . . .

## III

### Section 1550 Is Constitutional

Section 1550 provides as follows: "The state department may suspend or revoke any license, registration, or special permit issued under the provisions of this chapter upon any of the following grounds and in the manner provided in this chapter:

". . . . . . . . . . . . . . . . . . .

"(c) Conduct in the operation or maintenance, or both the operation and maintenance, of a community care facility which is inimical to the health, morals, welfare, or safety of either an individual in or receiving services from the facility or the people of the State of California.

"(d) The director may temporarily suspend any license, registration, or special permit, prior to any hearing when, in the opinion of the director,

---

*See footnote 1, *ante.*

such action is necessary to protect residents or clients of the facility from physical or mental abuse, abandonment, or any other substantial threat to health or safety. The director shall notify the licensee, registrant, or holder of the special permit of the temporary suspension and the effective date thereof and at the same time shall serve such provider with an accusation. Upon receipt of a notice of defense to the accusation by the licensee, registrant, or holder of the special permit, the director shall, within 15 days, set the matter for hearing, and the hearing shall be held as soon as possible but not later than 30 days after receipt of such notice. The temporary suspension shall remain in effect until such time as the hearing is completed and the director has made a final determination on the merits. However, the temporary suspension shall be deemed vacated if the director fails to make a final determination on the merits within 30 days after the original hearing has been completed."

The Habruns contend it is impermissible for a statute to give the Director of the Department of Social Services license suspension discretion before hearing where to do so forces closure of, and in effect destroys, their business.

Where the People's interest is sufficiently compelling, due process permits the state to restrict a citizen's use of property, pending a speedy hearing. In *Ewing* v. *Mytinger & Casselberry, Inc.* (1950) 339 U.S. 594 [94 L.Ed. 1088, 70 S.Ct. 870], the court upheld a statute permitting seizure of misbranded food and drugs " 'when the Administrator has probable cause to believe from facts found, *without hearing* by him or any officer or employee of the Agency that the misbranded article is dangerous to health, or that the labeling of the misbranded article was fraudulent, or would be in a material respect misleading to the injury or damage of the purchaser or consumer.' [Fn. omitted.]" (*Id.,* at pp. 595-596 [94 L.Ed. at p. 1091], quoting § 304(a) of the federal Food, Drug, and Cosmetic Act in effect at the time; italics added.) In *Phillips* v. *Commissioner* (1931) 283 U.S. 589 [75 L.Ed. 1289, 51 S.Ct. 608], the United States Supreme Court upheld a procedure involving summary determination and collection by an administrative official of unpaid corporate taxes owing from stockholders of a liquidated corporation, subject to *later* judicial review. In each of these cases, the United States Supreme Court found a sufficiently compelling interest justified temporary deprivation of a property right subject to timely review.

California courts have applied a similar standard in other contexts. (See *Dupuy* v. *Superior Court* (1975) 15 Cal.3d 410 [124 Cal.Rptr. 900, 541 P.2d 540], seizure of delinquent taxpayer's property before hearing upheld, and *Stewart* v. *County of San Mateo* (1966) 246 Cal.App.2d 273 [54 Cal.Rptr. 599], approving suspension of the license of a private patrol ser-

vice pending a hearing, in the interest of public safety; cf. *Sokol* v. *Public Utilities Commission* (1966) 65 Cal.2d 247 [53 Cal.Rptr. 673, 418 P.2d 265], government lacked urgent interest to justify termination of telephone service for suspected criminal use; *McCallop* v. *Carberry* (1970) 1 Cal.3d 903 [83 Cal.Rptr. 666, 464 P.2d 122], prejudgment garnishment on behalf of private plaintiff without hearing violated due process; and *Rios* v. *Cozens* (1972) 7 Cal.3d 792 [103 Cal.Rptr. 299, 499 P.2d 979], vacated in *Dept. Motor Vehicles of California* v. *Rios* (1973) 410 U.S. 425 [35 L.Ed.2d 398, 93 S.Ct. 1019], reinstated on remand in *Rios* v. *Cozens* (1973) 9 Cal.3d 454 [107 Cal.Rptr. 784, 509 P.2d 696], interest in securing payment to auto accident victims was not sufficiently urgent to justify driver's license suspension based on determination of fault without hearing.)

From these cases, we discern due process permits the state to temporarily deprive a citizen of enjoyment of a property right if the state's interest is both compelling and urgent, and if a timely hearing is provided.

■ Under the rationale of these cases, we hold section 1550 is constitutional. The safety of senior citizens in residential care facilities is a most compelling interest. It is also an urgent interest where, as here, the state had reason to believe residents were in imminent danger. Section 1550 satisfies due process by providing a timely hearing following license suspension.

For the state to permit a license to remain in effect, when it believes the license is being abused to exploit and endanger helpless elderly persons, would deny them due process. Thus, section 1550 reasonably balances the rights of facilities operators against the rights of residents.

Finally, it appears the Habruns believe section 1550 permits too broad a discretion in the Director of the State Department of Social Services to suspend the license. We read the statute as permitting suspension only where the director reasonably believes continued operation of the facility would threaten its residents. Here, there is no showing the director abused her discretion.

IV*

THE HABRUNS SHOW NO PREJUDICE FROM THE
DENIAL OF A CONTINUANCE

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

*See footnote 1, *ante.*

## V*

**FAILURE TO PROVIDE AN INTERPRETER WAS NOT
REVERSIBLE ERROR IN THIS CASE**

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

*Disposition*:
Affirmed.

Wiener, Acting P. J., and Lewis, J.,† concurred.

A petition for a rehearing was denied August 9, 1983.

---

*See footnote 1, *ante*.
†Assigned by the Chairperson of the Judicial Council.